IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ransom & Randolph Company,     Case No. 3:06CV2710

    Plaintiff

v.     ORDER

Local 12, International Union, UAW,
    Ransom & Randolph Unit,

    Defendant.

Plaintiff, Ransom & Randolph Company [Ransom], brings this action under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, to vacate a portion of an arbitration award issued in favor of defendant, Local 12, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Ransom & Randolph Unit [the Union]. The Union has filed a counterclaim seeking confirmation of that same portion of the arbitration award.

In the award, the arbitration panel concluded, *inter alia*, that the Union could arbitrate a grievance it filed on behalf of three named Ransom retirees. In an earlier decision, I had concluded that a nearly identical grievance filed by the Union on behalf of unnamed retirees was not arbitrable. The parties now seek to resolve which decision on arbitrability – my order or the panel's award – controls.

This court has jurisdiction pursuant to 29 U.S.C. § 185 and 28 U.S.C. § 1331.

1

Pending are the parties' cross-motions for summary judgment. For the reasons that follow, I conclude that the parties did not clearly and unmistakably submit the arbitrability question to the panel, leaving the panel without authority to resolve issues of arbitrability.[1] As a result, Ransom's summary judgment motion shall be granted, and the Union's summary judgment motion shall be denied.

---

[1]

Ransom also argues that my ruling is controlling for a second, independent reason: my earlier ruling on arbitrability collaterally estopped the Union from relitigating the arbitrability question.

I hold below that the panel lacked authority to decide the arbitrability question because the parties did not clearly and unmistakably submit this question to the panel. Here, I hold in the alternative that even if both parties had agreed to submit the arbitrability question to the arbitrators, the Union was collaterally estopped from relitigating this issue.

Ransom has established all elements of the Sixth Circuit's collateral estoppel test: 1) The issue in the subsequent arbitration proceeding, the arbitrability of the Medicare Part B premium grievance filed on behalf of retirees, is identical to the question resolved in the earlier litigation; 2) the issue was actually litigated and decided in the prior litigation; 3) the resolution of the arbitrability issue was necessary and essential to a judgment on the merits in the prior litigation; 4) the party to be estopped, the Union, was a party to the prior litigation; and 5) the Union had a full and fair opportunity to litigate the issue of arbitrability. *See Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005); *see also Aircraft Braking Systems Corp. v. Local 856, Intern. Union, United Auto., Aerospace and Agr. Implement Workers, UAW*, 97 F.3d 155 (6th Cir. 1996) (vacating arbitrator's award that conflicted with earlier opinion of district court on ground that arbitrator was collaterally estopped from deciding arbitrability question).

The Union contends that the fourth element of this test has not been satisfied because my statement on arbitrability in my April 13, 2006, opinion is dictum. Thus, because my conclusion was not "necessary" to the outcome of the prior proceeding, the Union argues, collateral estoppel does not apply.

Dictum, an opinion of a judge that does not embody the resolution or determination of the specific case before the court, *Hinchman v. Moore*, 312 F.3d 198, 203-04 (6th Cir. 2002) (citation and quotation marks omitted), is not binding on a court, *id.* at 204 (citing *Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 643 (6th Cir. 2001)).

My statement on arbitrability was not dictum. Indeed, my conclusion that the CBA "arguably excludes disputes between retired workers and the company from arbitration" is the case's holding. [Doc. 1, Exh. C, at 3]. My second statement, in contrast, *is* dictum: my observation that the Union lacked standing because it failed to obtain the retirees' consent to represent them is an alternative holding.

As a result, my conclusion on the arbitrability of a grievance brought on behalf of retirees was, in fact, necessary to a judgment on the merits and can be used defensively by Ransom to prevent the Union from relitigating the arbitrability issue.

2

### I. Background

### A. The Parties

Ransom, a wholly owned subsidiary of Dentsply International, Inc., operates a plant in Maumee, Ohio, where it manufactures precision investment castings used in jewelry castings and industrial molds. The Union is the exclusive collective bargaining representative of certain of Ransom's hourly workers.

Ransom and the Union are parties to a collective bargaining agreement [CBA],[2] which provides Ransom retirees with continued medical coverage. The CBA, *inter alia*, obligates Ransom to reimburse retirees for their payment of Medicare Part B premiums.

### B. The 2005 Grievance

The CBA provides that Ransom "shall make payment to each [covered retiree] for the [Medicare Part B] Premium," [Doc. 1, Exh. A, at 33], but the CBA does not define either "payment" or "premium" or otherwise indicate how, exactly, the reimbursement figure would be calculated.

Ransom has paid retirees an amount equal to the Medicare Part B premium in effect at the time each employee retired. In July, 2005, the Union filed a grievance on behalf of retirees challenging this reimbursement calculation [the 2005 grievance].[3] The grievance alleged that Ransom violated the CBA by failing to compensate retirees for post-retirement Medicare Part B premium increases.

---

[2] The CBA was adopted on February 1, 2004, and is effective through January 31, 2008. [Doc. 1, ¶5].

[3] The Union filed two grievances in July, 2005. As I noted above, it filed one grievance (Grievance 05-05) on behalf of retirees. It filed a second grievance (Grievance 05-08) on behalf of unnamed "affected individuals." Because the Union moved to compel arbitration only of the retirees' grievance, however, a discussion of Grievance 05-08 is unnecessary.

Pointing to Article 7 of the CBA, which defines a grievance as "[a]ny dispute between the *employees* and the Company," [Doc. 1, Exh. A, at 6 (emphasis supplied)], Ransom denied the 2005 grievance and refused to participate in arbitration. Because, according to Ransom, retirees are no longer "employees," Article 7 excludes retirees from the CBA's grievance procedure. Thus, Ransom argued, the Union could not file a grievance on behalf of retirees only.

The Union filed a motion in this Court seeking to compel arbitration of the 2005 grievance. On April 13, 2006, I granted Ransom's motion to dismiss the Union's motion to compel. I agreed with Ransom that the CBA permits only "employees" to file grievances; thus, a grievance filed on behalf of a retiree is not arbitrable. I held in the alternative that the Union lacked standing because it did not have the retirees' permission to represent them:

> Because the parties' CBA defines the grievance procedure as between employees and the company, it arguably excludes disputes between retired workers and the company from arbitration. Even assuming, *arguendo*, the grievance is arbitrable, Local 12 needed the retired workers' consent to represent them. The union failed to obtain the retired workers' consent and thus does not have standing to represent the retired workers.

*Local 12 v. Ransom & Randolph*, 2006 WL 991057, at *1 (N.D. Ohio).

**C. The 2006 Grievance**

In May, 2006, the Union filed a second grievance challenging Ransom's Medicare Part B premium reimbursement calculation [the 2006 grievance].[4] The Union brought the 2006 grievance on behalf of three named retirees.[5]

Citing my April 13, 2006, order dismissing the Union's motion to compel the 2005 grievance, Ransom denied the 2006 grievance. Ransom again argued that because 1) the CBA limits grievances to disputes between Ransom and "employees," and 2) retirees are no longer "employees," a grievance filed on behalf of retirees is not arbitrable.

When the Union sought arbitration of the 2006 grievance, however, instead of forcing the Union to file a motion to compel, as it did after the Union filed the 2005 grievance, Ransom agreed to participate in the arbitration. Ransom claims it agreed to participate to "continue to assert the lack of arbitrability of the grievance by citing to this Court's April 13, 2006 order." [Doc. 16, at 5 (citation omitted)].

During the proceedings, Ransom introduced evidence on the arbitrability of the grievance, and repeatedly argued that the panel must give deference to my April 13, 2006, ruling on arbitrability. For example, in its opening statement, Ransom argued that the 2006 grievance is not

---

[4] The Union filed two grievances in May, 2006. As I noted above, the Union filed a grievance on behalf of three named retirees (Grievance 06-01). The Union filed a second grievance (Grievance 06-02) on behalf of current employees objecting to an anticipated future underpayment by Ransom of their Medicare Part B premiums. Because, however, Ransom has moved to vacate, and the Union has moved to confirm, only Grievance 06-01, a discussion of Grievance 06-02 is unnecessary.

[5] The Union contends that the 2006 grievance does not suffer from the same defect I identified in the Union's 2005 grievance, in that the Union filed the 2006 grievance with the retirees' consent. [Doc. 24, at 1-2].

5

arbitrable because I had already so concluded with respect to the 2005 grievance in my April 13, 2006, order:

> Grievance # 06-01 is not arbitrable. The issue of arbitrability was already ruled upon by Judge Carr, Chief Judge of the Northern District of Ohio. He held that the retirees may not protest contractual benefit issues via the grievance procedure because the procedure is limited to disputes between the Company and its active employees, which by definition excludes retirees. I've provided copies of his order.

[Doc. 23, Exh. 1, at 1].

In its post-hearing brief, Ransom repeated this argument, stating that "this grievance is simply not arbitrable under this specific grievance procedure, based on the federal court's ruling, which must be given deference." [Doc. 19, Exh. A (post-hearing brief), at 8]. Ransom, however, never explicitly questioned the panel's jurisdiction nor stated that the panel lacked authority to decide the arbitrability dispute.

On September 26, 2006, the panel concluded, contrary to my April 13, 2006, order, that the 2006 grievance was arbitrable:

> As to the arbitrability of the grievance filed on behalf of the retired employees, the Panel finds that this grievance is arbitrable. The Employer has recognized that the Union has bargained for retirement benefits in each of its successive bargaining agreements since at least 1974. Clearly the parties have renewed this contractual provision over numerous contracts, and the Employer has recognized that the Union has represented the retired employees in each of those negotiations. Just as clearly the parties are bound to comply with all of the provisions contained within the agreement. The grievance procedure has been placed into the collective bargaining agreement by the parties as a method of resolving disputes arising from the agreement. Therefore it follows that the retired employees enjoy access to the grievance procedure through the Union as recourse for alleged violations of the agreement.

[Doc. 1, Exh. C, at 3].

In its award, the panel did not refer to my order, nor did the panel respond to Ransom's argument that the panel was bound by my ruling.

6

On the merits of the dispute, the panel concluded that Ransom had violated the CBA by failing to reimburse retirees for post-retirement increases in the Medicare Part B premiums. The panel ordered Ransom, *inter alia,* to pay retirees an amount equal to the Medicare Part B premium as adjusted annually by Medicare.

## II. Discussion

### A. What is the Appropriate Standard of Review?

Generally, courts review an arbitration award with great deference because, as the Supreme Court has explained, the parties have agreed to the arbitrator's – not the court's – construction of the agreement. *Beacon Journal Pub. Co. v. Akron Newspaper Guild, Local Number 7*, 114 F.3d 596, 599 (6th Cir. 1997) (citing *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 37-38 (1987)). "[T]o use Justice Douglas' often-cited phrase, the award in such a case must be affirmed if it 'draws its essence' from the governing agreement." *Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 477 (6th Cir. 2006) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 597 (1960)).[6]

Where, however, a party to the arbitration proceeding has challenged the panel's authority to decide the arbitrability question, the function of a reviewing court is distinctly different. *Id.*

---

[6]

The deferential standard of review requires the court "only to determine whether the arbitrator was 'arguably construing or applying the contract and acting within the scope of his authority.'" *Beacon Journal,* 114 F.3d at 599 (quoting *United Paperworkers*, 484 U.S. at 38).

The award is legitimate if it "draws its essence from the collective bargaining agreement," and does not merely serve the arbitrator's "own brand of industrial justice." *Id.* (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Co.*, 363 U.S. 593, 597 (1960)). A reviewing court cannot replace the arbitrator's construction of the agreement with the court's own interpretation. *Appalachian Regional Healthcare, Inc. v. United Steelworkers of America, AFL-CIO-CLC, Local 14398*, 245 F.3d 601, 604 (6th Cir. 2001).

7

The question of arbitrability is presumptively a question reserved for the court. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citations omitted). To overcome this presumption, the parties must "clearly and unmistakably" submit the arbitrability question to arbitration. *See id.* (citations omitted). If the parties submitted the question to the arbitrators, the court must apply the traditional, deferential standard of review. *See id.* at 943 (citations omitted). If, however, the parties did not submit the arbitrability issue to the panel, the reviewing court need not give the arbitrator's decision on arbitrability any deference. *See id.*

In this sense, a court's review helps to ensure that arbitration remains "a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration." *See id.* (citations omitted); *see also Bratt Enterprises, Inc. v. Noble Intern. Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003)[7] (citation omitted) ("[P]arties [must] only be compelled to arbitrate matters within the scope of their agreement, and this is so even when the result may be piecemeal litigation.").

**B. Did the Parties Agree to Submit the Arbitrability Question to Arbitration?**

In determining whether the parties clearly and unmistakably agreed to submit the question of arbitrability to the arbitrators, I must apply ordinary state law principles governing the formation of contracts. *First Options,* 514 U.S. at 944 (citations omitted).

The parties' agreement may itself specify that the initial issue of arbitrability shall be decided by the arbitrator. *See, e.g., PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996). Where the agreement lacks such a provision, however, courts generally analyze the conduct of the parties to determine if they agreed to submit the arbitrability question to the arbitrator. *See, e.g., Vic Wertz*

---

[7] In resolving labor arbitration issues, I may consider cases interpreting the Federal Arbitration Act. *Am. Fed'n of Television & Radio Artists v. WJBK-TV*, 164 F.3d 1004, 1009 (6th Cir. 1999) (citing *Misco*, 484 U.S. at 40 n.9).

*Distributing Co. v. Teamsters Local 1038, Nat. Conference of Brewery and Soft Drink Workers of the United States of America and Canada*, 898 F.2d 1136, 1140 (6th Cir. 1990) (noting that a court may infer parties' agreement to submit arbitrability question to arbitrator based on their conduct in the arbitration setting).

The Union relies on several cases in which the Sixth Circuit concluded that a litigant waived the right to a judicial arbitrability decision by participating in arbitration without reserving that right. *See, e.g., Cleveland Elec. Illuminating Co. v. Util. Workers Union of America*, 440 F.3d 809, 813-14 (6th Cir. 2006) (holding that employer "waived" its right to a judicial determination of arbitrability "'without reservation,'" where "nothing in the record . . . indicate[d] that [the employer] wanted to reserve the question of arbitrability for the court"); *Interstate Brands, Corp. Butternut Bread Div. v. Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 135*, 909 F.2d 885, 890 (6th Cir. 1990) (holding that where an employer participated in arbitration proceedings "in the first instance" – without forcing the union to compel arbitration – the employer "implicitly agreed" to arbitrator's decision on arbitrability, thereby "waiv[ing]" its right to a judicial decision on arbitrability). The court in *Interstate Brands* relied on its earlier opinion in *Vic Wertz,* where it concluded that the parties, by failing to reserve the question for initial determination by a judge, submitted the issue of arbitrability to the arbitrator "in the first instance." 909 F.2d at 890.

The Union argues that Ransom, like the employers in *Cleveland Electric* and *Interstate Brands*, clearly and unmistakably submitted the arbitrability question to the arbitrators, thereby waiving Ransom's right to a judicial determination on arbitrability. Pointing to Ransom's full participation in the arbitration and its submission of evidence on arbitrability to the panel, the Union contends that Ransom never argued or suggested that the panel had no authority to determine the

9

arbitrability issue. Thus, according to the Union, the arbitration panel's conclusions on both arbitrability and the merits of the grievance are entitled to full recognition by this Court.

Ransom responds that, while it did argue to the panel that the retirees' grievance was not arbitrable, it also consistently and repeatedly objected to the panel's authority to decide the arbitrability question. At the beginning of the arbitration, Ransom distributed copies of my order to the panel and to the Union representative, "informed the panel that the grievance had already been ruled to not be arbitrable by this Court" and "repeatedly informed the panel that since the Court had already made the arbitrability determination, there was no issue for the panel to decide." [Doc. 23, ¶4]. Ransom also claims that it repeated these arguments in its post-arbitration brief.

Ransom compares the facts at issue to those of *Aircraft Braking Systems Corp. v. Local 856, Intern. Union, United Auto., Aerospace and Agr. Implement Workers, UAW*, 97 F.3d 155 (6th Cir. 1996), in which a judge's decision on the arbitrability of a particular dispute was followed by an arbitrator's conflicting arbitrability decision.

In *Aircraft Braking*, a collective bargaining agreement between the employer – Aircraft Braking – and the union had expired, and Aircraft unilaterally imposed its final proposal on its hourly employees. This proposal contained a grievance and arbitration procedure. When the union filed a grievance, however, Aircraft denied the grievance on the ground that, because the union never ratified the final proposal, no agreement to arbitrate existed. Thus, according to Aircraft, the grievance was not arbitrable.

Refusing to participate in arbitration, Aircraft filed a motion in district court seeking to stay arbitration. The district court denied Aircraft's motion, concluding that an agreement to arbitrate existed. On appeal, the Sixth Circuit affirmed.

Later, the union filed two additional grievances, which Aircraft refused to arbitrate for the same reasons it cited in denying the union's first grievance. With respect to one of these grievances, the district court denied Aircraft's request to stay arbitration, and this grievance proceeded to arbitration.

At the hearing, Aircraft vehemently protested against the arbitrator's authority to hear the dispute. The arbitrator concluded, contrary to the district court's prior order, that no interim labor agreement existed. Thus, no enforceable agreement to arbitrate existed.

Subsequently, Aircraft filed a motion to vacate the arbitrator's award, which the district court granted.

On a *de novo* review of the district court's decision to vacate the arbitrator's award, the Sixth Circuit affirmed the district court's conclusion on two separate, independent grounds: 1) the arbitrator was collaterally estopped, based on the district court's previous ruling, from deciding whether an interim agreement existed between the parties; and 2) because the parties previously "clearly and unmistakably" submitted the arbitrability issue to the district court, the arbitrator's consideration of the arbitrability question was "in excess of his authority and in disregard of the law." *See id.* at 160.

The facts at issue bear some resemblance to those of *Aircraft Braking*. Like the employer in *Aircraft Braking*, Ransom "in the first instance," *Interstate Brands,* 909 F.2d at 890, sought a judicial decision on arbitrability of the 2005 grievance by forcing the Union to compel arbitration. Moreover, in both cases, a judge's decision on the arbitrability of a particular dispute was followed by an arbitrator's conflicting arbitrability decision.

11

Unlike Aircraft, however, Ransom agreed to participate in arbitration of the second Union grievance. Additionally, while Aircraft vociferously objected to the arbitrator's jurisdiction, Ransom did not explictly argue that the panel had no authority to hear the dispute.

The Sixth Circuit's precise analysis in *Aircraft Braking*, however, is instructive. The Court concluded for two reasons that the parties did not clearly and unmistakably submit the arbitrability question to the arbitrator: 1) Aircraft vehemently protested the arbitrator's authority to hear the dispute; and 2) the Court observed that "the parties clearly and unmistakably submitted the arbitrability issue to the *district court* [during their first dispute]." *See id.* (emphasis supplied). Thus, the Court considered the parties' behavior during both the previous district court litigation and the arbitration to determine whether the parties clearly and unmistakably submitted the arbitrability question to the arbitrator.

A similarly comprehensive evaluation of the parties' behavior during both proceedings – during the litigation in this Court and the arbitration – is helpful here. During the arbitration, Ransom made numerous references to my April 13, 2006, order, suggesting that Ransom maintained the same position with respect to both the 2005 grievance and the 2006 grievance. One may infer that Ransom, after seeking a judicial decision on arbitrability of the 2005 grievance, never changed its mind: with my opinion in hand, Ransom maintained during the arbitration of the second grievance that only a court could decide the arbitrability question.

It is likewise possible, however, as the Union suggests, that Ransom wholeheartedly submitted the issue to the arbitrators on the firm belief that the panel would defer to my opinion on collateral estoppel principles.

Ransom's insistence that the panel regard my opinion with "deference" can be interpreted in two different ways. First, Ransom may have been objecting to the panel's authority to decide the arbitrability issue, and its reference to my opinion demonstrated that none of its previous positions – including its opinion on which decision-maker could decide the arbitrability issue – had changed. As Ransom argues, "the only clear and unmistakable evidence proves that [Ransom's] position has *always* been that this Court, not the panel, had the authority to decide the question of "arbitrability." [Doc. 22, at 4 (emphasis in original)].

Alternatively, Ransom may have, in fact, chosen to submit the arbitrability question to the arbitrators, confident that the panel would agree that my decision was controlling on collateral estoppel grounds. In the Union's words, Ransom "wanted the panel to decide that the matter was not arbitrable and no doubt believed that [it] had a winner on that score," [Doc. 24, at 2], "took a gamble," and "made [its] choice and . . . lost," [Doc. 19, at 4].

I conclude that Ransom did not "clearly and unmistakably" submit the arbitrability question to the panel. Ransom "in the first instance," *Interstate Brands,* 909 F.2d at 890, demanded a judicial determination of arbitrability, and the only evidence indicating that Ransom may have changed course is Ransom's participation in the arbitration and its arguments to the panel on arbitrability. "But merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by the arbitrator's decision on that point." *First Options,* 514 U.S. at 946.

Ransom's repeated references to my order suggest that Ransom agreed only to a judicial decision on arbitrability, and any remaining ambiguity on this question prevents me from concluding that the "clear and unmistakable" standard has been met. As the Supreme Court explained in *First*

13

*Options*, where silence or ambiguity makes it difficult to determine whether the parties agreed to submit the arbitrability question to arbitration, the law presumes that the parties did not agree to arbitrate arbitrability. 514 U.S. at 944-45.

The policy in favor of this "reverse[] . . . presumption" is sound: while parties generally thoroughly consider the scope of the actual issues to be arbitrated, the parties "often might not focus upon [the question of who should decide arbitrability] or upon the significance of having arbitrators decide the scope of their own powers." *Id.* at 945.

Thus, because the parties did not "clearly and unmistakably" agree to submit the arbitrability question to the panel, I need not give the panel's conclusion on arbitrability any deference. *First Options,* 514 U.S. at 943. Indeed, because the panel did not have the parties' authorization to decide that question, its consideration of arbitrability "was in excess of [its] authority and in disregard of the law." *Aircraft Braking,* 97 F.3d at 160 (citing *John Morrell & Co. v. Local Union 304A of the United Food and Commercial Workers, AFL-CIO*, 913 F.2d 544, 563 (8th Cir.1990)); *see also Coady v. Ashcraft & Gerel,* 223 F.3d 1 (1st Cir. 2000) (vacating award on ground that arbitrators exceeded authority in expanding ruling of district court). On this basis, I vacate and remand to arbitration that portion of the arbitrators' award relating to the 2006 grievance.

### III. Conclusion

For the foregoing reasons, it is therefore

ORDERED THAT plaintiff's motion for summary judgment be, and the same hereby is, granted, and defendant's motion for summary judgment be, and the same hereby is, denied.

So ordered.

                                              s/James G. Carr
                                              James G. Carr
                                              Chief Judge